IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DALE E. BETTISWORTH, Personal Representative of the Estate of Cathy Jo Bettisworth, deceased,<br><br>Plaintiff,<br><br>vs.<br><br>BNSF RAILWAY COMPANY, f/k/a Burlington Northern and Santa Fe Railway Company,<br><br>Defendant. | 8:17-CV-491<br><br>MEMORANDUM AND ORDER |

The plaintiff, Dale Bettisworth, alleges claims pursuant to the Federal Employers' Liability Act (FELA) regarding an injury sustained by his deceased wife, Cathy Jo Bettisworth, in the course and scope of her employment with the defendant, the BNSF Railway Company. Filing 1 at 1-2. From 1979 to 2012, Cathy worked at the defendant's railyard in Alliance, Nebraska, primarily as a hostler moving locomotives from one location to another within the railyard. Filing 1 at 2-4. The plaintiff alleges that Cathy was exposed to diesel exhaust and diesel fuel during her employment with the defendant, and that the cumulative effect of her exposures, at least in part, caused or contributed to the development of her lung cancer. The plaintiff also alleged that Cathy's exposures were the result of the defendant's negligence. Filing 1 at 2-3. Cathy was diagnosed with adenocarcinoma of the lung in October 2014, and passed away on December 31, 2014. Filing 132-3 at 7; filing 132-1.

The defendant filed two motions for summary judgment. The first motion seeks partial summary judgment regarding the plaintiff's survival right of action. Filing 126. The second motion seeks dismissal of the plaintiff's

complaint based on the assertion that after dismissal of the plaintiff's survival action, the plaintiff cannot prove the only damages still at issue as a matter of law. Filing 129. The Court finds that the defendant's motions should be denied.

## I. STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.*

## II. DISCUSSION

### 1. PLAINTIFF'S SURVIVAL RIGHT OF ACTION

FELA allows for two distinct claims to be brought when an injury causes or contributes to an employee's death—a wrongful death claim pursuant to 45 U.S.C. § 51, and a survival claim pursuant to 45 U.S.C § 59. *Reading Co. v. Koons,* 271 U.S. 58, 62-63 (1926); *Poland v. Union Pac. R.R. Co.,* No. 8:18-CV-503, 2020 WL 469971, at *2 (D. Neb. Jan. 29, 2020). Here, the defendant asserts that the plaintiff's survival claim (but not the plaintiff's wrongful death claim) is time-barred. Filing 127 at 5-7. Under FELA, no action shall be maintained "unless commenced within three years from the date the cause of action accrued." 45 U.S.C. § 56.

When the injury is one where the symptoms appear over time, the cause of an action does not accrue until the injured employee is aware, or should be aware, of her condition and know, or have reason to know, of the condition's

cause. *White v. Union Pac. R.R. Co.*, 867 F.3d 997, 1001 (8th Cir. 2017). The inquiry is an objective one—when, in the exercise of reasonable diligence, did the plaintiff know, or should have known, the essential facts of injury, as well as the cause of the injury. *Id.* This rule imposes an affirmative duty on a plaintiff to investigate potential causes of a known injury. *Tolston v. Nat'l R.R. Passenger Corp.*, 102 F.3d 863, 865 (7th Cir. 1996). The plaintiff need only know, or have reason to know, of a potential cause. Actual knowledge of causation is not necessary to find that a cause of action has accrued. *Fries v. Chi. & Nw. Transp. Co.,* 909 F.2d 1092, 1096 (7th Cir. 1990).

The point at which a plaintiff may be said to have reason to know that an injury is connected to some possible cause may depend on factors such as the number of possible causes that exist for an injury, whether medical advice suggests a possible cause, or whether medical advice quells a plaintiff's suspicion regarding the cause of an injury. *Dubose v. Kansas City Southern Ry. Co.*, 729 F.2d 1026, 1031 (5th Cir. 1984); *Edgett v. Union Pac. R.R. Co.,* No. 8:18-CV-407, 2021 WL 1238498, at *8 (D. Neb. April 1, 2021). Whether a plaintiff reasonably should have known about the cause of their claim is a two-part inquiry. *O'Connor v. Boeing North America, Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002). The first question asks: Would a reasonable person in the plaintiff's shoes have been expected to inquire about the cause of their injury in the first place? *Id.* The second question asks: If the plaintiff had reason to inquire, would an inquiry have provided the plaintiff with knowledge of a connection between their injury and its cause? *Id.*

Here, the plaintiff's lawsuit was filed on December 26, 2017. Filing 1. According to the defendant, at the latest, the plaintiff and Cathy knew or should have known that Cathy's lung cancer was caused or contributed to by her employment when she received her cancer diagnosis in October 2014.

3

Filing 127 at 7. Further, the defendant argues that Cathy demonstrated she had actual knowledge of her exposure to hazardous chemicals during the course of her employment, and that she thought, or at least suspected, that this exposure might be related to her cancer. Filing 127 at 8-9. The evidence of Cathy's actual knowledge, the defendant argues, comes from the patient intake information obtained by her oncologist, Dr. Klaus Wagner. Cathy saw Dr. Wagner on November 13, 2014, for a new patient consultation. Filing 128-1 at 8. Dr. Wagner agreed that he tries to get as much background information as possible from a new patient, and asks open-ended questions regarding a patient's family and social history. Filing 128-1 at 8-9.

In the social history section of his form, Dr. Wagner reported, "She was exposed to asbestos, diesel fumes, and others at work." Filing 128-1 at 9. Dr. Wagner said that this was information shared with him by the patient. Over plaintiff counsel's objection, Dr. Klaus was asked if it was Cathy who indicated that she thinks her exposures might have some kind of connection to her lung cancer. Filing 128-1 at 11. Dr. Klaus answered, "So I don't know what—why she brings up these particular ones, but obviously I would assume she thought they might be related to her cancer." Plaintiff's counsel objected again that Dr. Klaus' answer was non-responsive and was his opinion on Cathy's thought process. Filing 128-1 at 12.

A subjective suspicion that an illness was work-related is not necessarily sufficient to start the accrual of a limitation period. *Stoleson v. United States,* 629 F.2d 1265, 1270 (7th Cir. 1980); *Edgett,* 2021 WL 1238498, at *8. There is a legal distinction between a subjective suspicion that something may be a cause of a condition, and the requisite objective knowledge of a causal connection that starts the accrual clock running. *Bayless v. United States,* 767 F.3d 958, 967 (10th Cir. 2014).

4

At best, Dr. Klaus' assumption about what Cathy thought, even if it were admissible evidence, merely shows Cathy's subjective suspicion that her lung cancer may be connected to her employment with the defendant. Dr. Klaus' patient intake history also reported that Cathy said she was a two pack-a-day smoker for forty years. Dr. Klaus testified that smoking was "probably very more likely" to be the cause of Cathy's lung cancer. Filing 132-2 at 8. The plaintiff testified that when Cathy was diagnosed, they both quit smoking because of the information he read on the Internet about smoking and lung cancer. Filing 132-3 at 7.

The plaintiff said that he attended all of his wife's medical appointments from September 2014 forward, and he recalled Cathy's primary care physician, Dr. Ash-Mott, telling her that her lung cancer was caused by smoking. Filing 132-3 at 9. He didn't recall any doctor telling them that Cathy's cancer could be attributed to her work at the railroad. Id. The plaintiff said that shortly after Cathy's death, he saw a commercial on television that led him to believe Cathy's lung cancer could be caused, at least in part, from her work at the railroad. Id. The plaintiff said that neither he nor Cathy did any kind of investigation into the cause of her lung cancer after she was diagnosed. Filing 132-3 at 22. He said, "I was just worried about my wife. We tried to find the best medical facilities we could find for her." Id.

The Court finds that the evidence does not show that, as a matter of law, Cathy or the plaintiff were aware, during Cathy's lifetime, that work on the railroad could be a cause of Cathy's lung cancer. The defendant has not produced evidence that any doctor informed Cathy or the plaintiff that Cathy's exposures to toxins on the job was connected to her cancer. Neither has the defendant produced evidence showing publicly available information, news reports, or information from other publicly available sources linking lung

5

cancer to the exposures found at the Alliance railyard. Nothing in the record suggests that a reasonably diligent person in Cathy or the plaintiff's shoes would have done more to discover an additional potential cause of Cathy's illness, given the fact that her doctors were telling her it was due to smoking. Further, there is no evidence that a timely investigation would have shown Cathy, or the plaintiff, that there was a connection between her on-the-job exposures and lung cancer.

The defendant's motion for partial summary judgment regarding the plaintiff's survival claim is denied. What the plaintiff or Cathy knew about the potential causes of her lung cancer—and when they knew it—is a factual question that is appropriate for a jury to decide. *See Edgett*, 2021 WL 1238498, at *9.

### 2. FAILURE TO PROVE DAMAGES

The defendant argues that because the plaintiff's survival claim was filed out-of-time, and due to the parties' joint stipulations limiting damages to only those recoverable in a survival action (filing 120 & filing 123), the plaintiff is unable, as a matter of law, to prove any damages recoverable in a FELA wrongful death action. Filing 129. Because damages are an essential element of a FELA claim, the defendant argues, the plaintiff's wrongful death claim, in addition to the survival claim, must be dismissed. *Id.*

Obviously, the Court has rejected the defendant's primary premise—that the plaintiff's survival claim was filed out-of-time. Accordingly, the defendant's motion to dismiss for a failure to prove damages must be denied. However, the Court does not necessarily agree with the defendant's secondary premise—that the parties' stipulations have limited the plaintiff to damages that are only recoverable in a FELA survival action.

In his amended complaint, the plaintiff sought "all damages recoverable under the FELA." Filing 35 at 5. In the first damages stipulation, the plaintiff agreed to "limit damages sought to past medical expenses incurred by Plaintiff and Decedent, in addition to pain, suffering and emotional damages." The plaintiff also specifically withdrew "claims for loss of future benefits and loss of Railroad Retirement Board pension benefits." Filing 120. In the second stipulation, the plaintiff agreed to "limit damages sought to: Plaintiff's decedent experienced and endured pain, suffering, inconvenience, irritation, annoyance and suffered emotional distress." Again, the plaintiff also specifically withdrew "claims for past medical expenses incurred by Plaintiff and Decedent." Filing 123.

The recoverable damages in a FELA wrongful death action are the damages that flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received. *Norfolk & W. Ry. Co. v. Liepelt*, 444 U.S. 490, 493 (1980); *Michigan Cent. R. Co. v. Vreeland*, 227 U.S. 59, 70 (1913). The loss of a pecuniary benefit must be one which can be measured by some standard, but is not so narrow as to exclude damages for the loss of services of a husband or wife. *Vreeland*, 227 U.S. at 71. However, "the loss of society and companionship, and the acts of society which originate in the relation and are not in the nature of services, are not capable of being measured by any material standard." *Vreeland*, 227 U.S. at 73.

The damage claims that the plaintiff specifically withdrew in the stipulations do not include claims that would implicate a pecuniary benefit for the plaintiff's loss of his wife's services capable of being measured by a material standard. Further, it is ambiguous whether the second stipulation limits damages sought for suffering, inconvenience, irritation, annoyance, and suffered emotional distress to only what Cathy experienced. Whether the

7

plaintiff can, or will prove his pecuniary loss measurable by a material standard with respect to the damage claims embraced by the parties' stipulated limitations is yet to be seen. That is why we have trials.

IT IS ORDERED:

1. The defendant's motion for partial summary judgment regarding application of the statute of limitations to the plaintiff's survival claim (filing 126) is denied.

2. The defendant's motion for summary judgment regarding the plaintiff's inability to prove damages (filing 129) is denied.

Dated this 27th day of April, 2021.

BY THE COURT:

John M. Gerrard
Chief United States District Judge